UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                    :

DONALD DRENNAN WILLIAMS JR. and PHILLIP  :
ANDREW BLANKENSHIP,                            :
                                      :

               Petitioners,           :
                                      :

          -v-                 :            25 Civ. 124 (JPC)
                                      :

JSL SECURITIES, INC. and MMA SECURITIES LLC,  :      OPINION AND ORDER
                                      :

            Respondents.        :
                                      :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Petitioners Donald Drennan Williams Jr. and Phillip Andrew Blankenship have petitioned the Court to confirm an arbitration award they secured in a Financial Industry Regulatory Authority ("FINRA") arbitration against Respondents JSL Securities, Inc. ("JSLS") and MMA Securities LLC ("MMAS"), two subsidiaries of Marsh & McLennan Agency, LLC ("MMA"). Petitioners initiated the arbitration against Respondents and two of their employees, Kimberly Lynn Blackmore and Craig J. Reid, bringing claims arising from the alleged withholding of Petitioners' commissions and fees in violation of arrangements between Petitioners, JSLS, and Royal Alliance Associates, Inc. ("Royal Alliance"). The FINRA arbitration panel (the "Panel") found Respondents liable and issued an award in favor of Petitioners (the "Award").[1]  As Petitioners acknowledge, Respondents have since paid the Award.

      The Petition is timely and unopposed by Respondents. The parties also consented that judgment may be entered upon an arbitration award, and the Award here has not been vacated,

---

[1] The Panel did not find Reid and Blackmore liable for any of Petitioners' claims. *See* Dkt. 1 ("Petition") at 1; Dkt. 1-1 ("Award") at 10.

modified, or corrected.  Because no material facts are in dispute and grounds for the Panel's

decision may be inferred from the record, such that there is a colorable justification for the Award,

the Court confirms the Award.

## I. Background[2]

### A.    The FINRA Arbitration

On October 28, 2022, Williams and Blankenship initiated a FINRA arbitration against

JSLS, MMAS, Reid, and Blackmore, captioned *Phillip Andrew Blankenship and Donald Drennan*

*Williams v. Kimberly Lynn Blackmore, JSL Securities, Inc., MMA Securities LLC, and Craig J.*

*Reid*, FINRA Dispute Resolution Case No. 22-02473, which culminated in the Award.  Petition at

1, ¶ 3.[3]  In their Statement of Claim in the arbitration, Petitioners brought claims for tortious

interference with business relations, respondeat superior, violation of Alabama Code Section

8-24-1, conversion, unjust enrichment, and a demand for accounting, all arising from events that

followed Petitioners' resignations from MMA.  Sansbury Decl., Exh. 2 ("SOC") ¶¶ 55-91.  The

Panel considered Petitioners' claims for conversion, unjust enrichment, and the demand for

---

[2]  The Court takes the following facts from the Award and the Declaration of Michael T.
Sansbury in support of the Petition, Dkt. 19-1 ("Sansbury Decl."), including the exhibits attached
thereto.

[3]  On October 19, 2022, MMA filed a related action in this District, *Marsh & McLennan*
*Agency LLC v. Donald Drennan Williams, Jr.* ("*Williams*"), No. 22 Civ. 8920 (JPC) (S.D.N.Y.).
In that case, MMA "allege[d], among other things, that Defendants [Williams and Blankenship]
established a competing company, solicited MMA's clients for that new company,
misappropriated confidential information, and breached their contracts with MMA."  *Williams*,
No. 22 Civ. 8920 (JPC), 2025 WL 1265817, at *1 (S.D.N.Y. Apr. 30, 2025).  On April 30, 2025,
this Court granted the defendants' motion to compel arbitration and stayed the case in its entirety
pending the outcome of that arbitration, which the parties were ordered to initiate by June 29, 2025.
*Id.* at *1, *15.

accounting, and granted Respondents a directed verdict on the other claims. Award at 9-10.[4] The Court briefly recounts the parties' dispute, as presented to the Panel.

In 2007, Williams worked as a salesperson for an insurance agency called Anderson, Williams & Company ("AW") and as an "independent contractor registered representative" for Royal Alliance, a broker-dealer and investment advisory services firm. SOC ¶¶ 1, 11-12; Sansbury Decl., Exh. 5 ("Arbitration Answer") at 4-5; Arbitration Answer, Exh. 3 (Broker Dealer Services Agreement between JSLS and Royal Alliance) ("BDSA") at 1. In March of that same year, AW was acquired by J. Smith Lanier & Co. ("JSL"), a licensed insurance agency. SOC ¶¶ 8, 11; Arbitration Answer at 5. JSL subsequently formed a subsidiary, JSLS, as a limited broker-dealer that could receive commissions from Williams's activities with Royal Alliance. SOC ¶¶ 13-14; Arbitration Answer at 5-6, 12; BDSA at 1, § 2.

On January 13, 2017, almost ten years after JSL's acquisition of AW, JSL was acquired by MMA. SOC ¶ 23; Arbitration Answer at 6. MMA intended for MMAS, its subsidiary and a limited registration broker-dealer, to "replace [JSLS] and . . . take over the Royal Alliance accounts serviced by [Petitioners]." SOC ¶¶ 4, 23-24; Arbitration Answer at 6 (stating that "MMA's post-merger plan was to transition all of the business at [JSLS] to [MMAS]").[5] Following MMA's acquisition of JSL, JSLS became an MMA subsidiary and Petitioners became MMA employees. SOC ¶¶ 8-9; Arbitration Answer at 6. As Petitioners alleged before the Panel, MMA "repeatedly pressured" Petitioners throughout the acquisition to move clients from Royal Alliance to MMAS,

---

[4] Because the Award lacks original pagination, the Court will cite to the Award using the ECF-generated page numbers.

[5] During the arbitration, Petitioners maintained that MMAS, as a limited broker-dealer, was authorized "only to do business as a mutual fund retailer and to sell variable annuities and investment advisory services" and was prohibited from "conduct[ing] retail securities transactions." SOC ¶ 24.

despite MMAS lacking the Securities and Exchange Commission ("SEC") or FINRA authorization necessary to conduct securities transactions. SOC ¶¶ 23-24.[6] Petitioners refused to move any clients, however, citing fiduciary duties and potential violations of the Investment Advisors Act of 1940 ("IAA") and the SEC's Regulation Best Interest ("Reg BI"). *Id.* ¶ 25. According to Petitioners, moving clients to MMAS, where clients supposedly would be unable to buy or sell stocks and would be forced to sell investments, would have been "a textbook violation of the IAA." *Id.* ¶¶ 26-27, 31-32. Even if MMAS had obtained approval from the SEC and FINRA, Petitioners maintained that MMAS still would have been "unable to provide the same variety of products" as Royal Alliance, which would have constituted a "material limitation" under Reg BI. *Id.* ¶ 28.[7]

Petitioners further asserted that, during a meeting on April 25, 2022, MMA executives announced JSLS's termination date as October 1, 2022, and mandated that Petitioners "transition their [broker-dealer] affiliation" to MMAS, despite MMAS lacking the "appropriate approvals, registrations, business platforms, and systems to process and supervise" Petitioners' securities business. *Id.* ¶ 34. According to Petitioners, on June 3, 2022, MMA executives confirmed Petitioners' suspicions by acknowledging "[t]he dramatic change in products and services" that MMAS would offer. *Id.* ¶ 38. On that same day, Blackmore, an MMAS executive, directed Petitioners to first transition those "clients that yield the largest commission values" to MMAS, regardless of whether the platform was "adequate." *Id.* ¶ 40. Petitioners claimed that, by this point, no "workable solution to MMA's demands" remained, and so Petitioners felt "virtually . . . forced to resign." *Id.* ¶ 42. Respondents, however, contested this narrative at arbitration,

---

[6] Respondents contended that MMAS did not begin the transition of clients from JSLS to MMAS until early 2022, with October 1, 2022, as the "target date." Arbitration Answer at 7.

[7] Respondents countered that Petitioners "would be able to service their clients" and "offer the same or similar services" through MMAS. Arbitration Answer at 7.

maintaining that by May 16, 2022, and unbeknownst to MMA, Petitioners had already formed Advo(K)ate, a competing company that provided investment advisory services and securities brokerage business via Royal Alliance.  Arbitration Answer at 3, 7-8; SOC ¶ 10.

According to Respondents, on June 9, 2022, either Royal Alliance or Petitioners, without informing MMAS or JSLS, de-registered Royal Alliance and JSLS with FINRA and registered Royal Alliance and Advo(K)ate.  Arbitration Answer at 8, 11.  Respondents asserted that the following day, Royal Alliance "provided the requisite 60-day notice that [Royal Alliance] was terminating its BDSA with [JSLS]."  *Id.* at 8.  Petitioners, along with other colleagues, tendered their resignations to MMA on June 13, 2022.  *Id.*; SOC ¶ 42.

Petitioners alleged that, following their resignations, MMA, JSLS, and JSL executives directed MMA agents to reach out to Royal Alliance clients using solicitation language containing "gross misrepresentations" about Petitioners' departure and JSLS's capabilities.  SOC ¶¶ 45-46, 48.  According to Petitioners, MMA also instructed JSL personnel "to open and retain [Petitioners'] mail and not allow it to be retrieved" by Petitioners.  *Id.* ¶ 51.  This mail allegedly included confidential "Royal Alliance client statements" not intended for MMA.  *Id.*  Most crucially, Petitioners claimed that after the severance between JSLS and Royal Alliance, JSLS "continued to accept commissions and investment advisory fees earned by [Petitioners]" which were "wrongfully retained by JSL, MMA, and/or MMA Securities."  *Id.* ¶¶ 73, 80-81.  Petitioners contended that these commissions and fees, "by virtue of the agreements" between Petitioners, JSLS, and Royal Alliance, were "intended to be distributed" to Petitioners.  *Id.* ¶ 81.

Before the Panel, Petitioners and Respondents separately described the various contracts that governed the distribution of revenue and commissions between the relevant entities.  Petitioners noted that JSLS "entered into [a] revenue sharing arrangement with Royal Alliance,"

by which they contended that JSLS "would receive the bulk of the commissions and fees generated by the dually registered representatives of Royal Alliance"[8] and then would "pay a portion of those commissions" to those representatives.  *Id.* ¶¶ 16-17.  Respondents pointed to two Asset Purchase Agreements—one between JSL, JSLS, and AW, and another between Williams and JSL—whereby they asserted that JSL acquired "the 'right to service and receive all revenue'" with respect to AW's and Williams's customer accounts.  Arbitration Answer at 5.  Respondents also highlighted the BDSA that JSLS and Royal Alliance signed, which they claimed "entitled [JSLS] to receive commissions 'with respect to products and services'" sold through the dually registered representatives of Royal Alliance and JSLS.  *Id.* at 12.  Finally, Respondents noted that Williams entered into a Sales Representative Agreement ("SRA") with JSLS and Royal Alliance, Arbitration Answer at 6; *see* Arbitration Answer, Exh. 3 (SRA), maintaining that Williams waived his right to his commissions and "instead directed Royal Alliance to pay such [c]ommissions" to JSL, BDSA § 2.

On December 12, 2024, the Panel issued the Award, finding Respondents "jointly and severally liable" and directing them to pay Petitioners $175,000 in compensatory damages plus interest at the "rate of 7.5% per annum from June 15, 2022, through and including November 21, 2024."  Award at 10, 13.  Respondents maintain that they paid the Award on December 31, 2024.  Dkt. 24 ("Response") ¶ 8.  Petitioners acknowledge that the Award has been paid by Respondents.  Petition ¶ 9 ("Although Respondents paid the arbitration award, payment of an arbitration award does not prevent confirmation." (citations omitted)).  Respondents further represent that they "do not plan" to request that the Award "be vacated, modified, or corrected" pursuant to the Federal

---

[8]  Williams became dually registered with Royal Alliance and JSLS in 2007 and Blankenship became dually registered in 2012.  SOC ¶¶ 15, 18; Arbitration Answer at 4.

Arbitration Act ("FAA").  Response ¶ 8.  But they contend that "any such judgment should and must acknowledge that the Award has been already been [sic] paid and satisfied so as to avoid the appearance that a new and enforceable judgment for $207,004.40 ($175,000 plus interest) has been rendered in this confirmation action."  *Id.* at 4.

## B.    Procedural History

On January 7, 2025, shortly after the Panel's issuance of the Award, Petitioners filed the instant Petition to confirm the Award pursuant to the FAA, 9 U.S.C. § 9.  Dkt. 1.  The Court subsequently ordered Petitioners to file and serve any additional materials in support of the Petition, Dkt. 6, which they did on January 31, 2025, Dkt. 19.  On February 28, 2025, Respondents filed their response, stating that they "do not oppose confirmation of the Award" or "[Petitioners'] request for a final order and judgment."  Response at 6.  Respondents, however, contend that the Petition "is unnecessary and a waste of judicial resources."  *Id.* at 4.  Additionally, Respondents request that any "order or judgment [by the Court] . . . explicitly state and acknowledge that the amount of compensatory damages in the Award has already been paid and that Respondents owe nothing further to [Petitioners]."  *Id*. at 6-7.  On March 7, 2025, Petitioners filed their reply, noting Respondents' lack of opposition and requesting the Court "enter an order confirming the Award and enter final judgment in favor of Petitioners" pursuant to the Award.  Dkt. 27 at 2.

## II.  Legal Standard

An unopposed petition to confirm an arbitration award is generally treated as an unopposed motion for summary judgment.  *Pacelli v. Vane Line Bunkering, Inc.*, 549 F. Supp. 3d 306, 318 (S.D.N.Y. 2021) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).  The "petition and the accompanying record" form the basis for a motion for summary judgment, evaluated under the standard set forth in Federal Rule of Civil Procedure 56.  *Trs. of the UNITE*

HERE Nat'l Health Fund v. JY Apparels, Inc. ("*Nat'l Health Fund*"), 535 F. Supp. 2d 426, 428 (S.D.N.Y. 2008) (quoting *D.H. Blair & Co.*, 462 F.3d at 110).  Under Rule 56, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are those that "might affect the outcome of the suit under the governing law."  *Id.*  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  Further, a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor" when evaluating a summary judgment motion.  *Id.*; *see also Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *3 (S.D.N.Y. May 12, 2008).

Even if the non-moving party does not oppose summary judgment, the court must examine whether the movant "has met its burden of demonstrating that no material issue of fact remains."  *Vt. Teddy Bear*, 373 F.3d at 244.  An unopposed summary judgment motion must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law."  *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Vt. Teddy Bear*, 373 F.3d at 244).  To confirm an unopposed petition, a court must therefore determine that "there is no genuine issue of material fact and that [the movant] is entitled to judgment as a matter of law."  *Finkel v. IDL Commc'n & Elec., Inc.*, No. 22 Civ. 5889 (NRM) (RML), 2023 WL 4565403, at *3 (E.D.N.Y. June 20, 2023), *report and recommendation adopted*, 2023 WL 4564911 (E.D.N.Y. July 17, 2023).

"The FAA governs confirmation of an award that is rendered in a FINRA arbitration."  *Egan v. Trower*, No. 20 Civ. 6165 (NRB), 2021 WL 197085, at *2 (S.D.N.Y. Jan. 20, 2021).

Under the FAA, "any party to an arbitration proceeding can apply for a judicial decree confirming the award." *Coinbase, Inc. v. Sherrer*, No. 24 Civ. 7427 (AT), 2024 WL 4894204, at *1 (S.D.N.Y. Nov. 25, 2024) (citing 9 U.S.C. § 9). Pursuant to 9 U.S.C. § 9, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). Indeed, confirmation of an award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Manor House Cap., LLC v. Pritsker*, No. 14 Civ. 7922 (GBD), 2015 WL 273684, at *2 (S.D.N.Y. Jan. 15, 2015) (quoting *D.H. Blair & Co.*, 462 F.3d at 110).

The Second Circuit has repeatedly emphasized that "judicial review of an arbitration award is narrowly limited," *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120-21 (2d Cir. 1991), and that "courts must grant an arbitration panel's decision great deference," *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Under this "extremely deferential standard of review," only "a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award," and the justification may be inferred from the factual record. *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 378-79 (2d Cir. 2023) (citation modified).

### III. Discussion

Petitioners seek confirmation of the Award in the amount of $175,000 plus prejudgment "interest calculated at a rate of 7.5% per annum from June 15, 2022, through and including November 21, 2024." Petition at 4. To confirm an arbitration award under Section 9 of the FAA, a petition must be both timely, meaning it must be filed within one year of the award, *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003); *see* 9 U.S.C.A. § 9, and based on an arbitration agreement that provides "that judgment may be entered on the arbitration award,"

*Ono Pharm. Co. v. Cortech, Inc.*, No. 03 Civ. 5840 (SAS), 2003 WL 22481379, at *3 (S.D.N.Y. Nov. 3, 2003) (internal quotation marks omitted); *see* 9 U.S.C. § 9.  The Panel issued its Award on December 12, 2024, and Petitioners filed the instant Petition on January 7, 2025.  Petition at 1, 4.  Because the Petition was filed within the one-year statute of limitations, it is timely.  *See Photopaint Techs.*, 335 F.3d at 158.  Further, Petitioners and Respondents each signed FINRA Arbitration Submission Agreements in which they submitted the matter to FINRA arbitration, agreed to abide by and perform any award, and consented to "submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment."  Sansbury Decl., Exh. 3 (Williams) ¶¶ 1, 4; *id.*, Exh. 4 (Blankenship) ¶¶ 1, 4; *id.*, Exh. 6 (JSLS) ¶¶ 1, 4; *id.*, Exh. 7 (MMAS) ¶¶ 1, 4; *see Ono Pharm.*, 2003 WL 22481379, at *3 (finding that where the parties "explicitly provided that judgment 'may be entered' on a final award," such language is "sufficient to trigger 9 U.S.C. § 9").  The Petition is therefore supported by arbitration agreements whereby the parties expressly agreed that judgment may be entered on the Award.

If a petition is timely and the parties consented to entry of judgment on the award, Section 9 of the FAA makes clear that a "court must grant such an [application] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11."[9]  9 U.S.C. § 9; *see Ono Pharm.*, 2003 WL 22481379, at *3 ("If an arbitration agreement states that judgment may be entered on the arbitration award, the award must be judicially confirmed upon the timely request of one of the

---

[9] The statutory bases for vacating or modifying an arbitration award under 9 U.S.C. §§ 10-11 include: where the award was procured by "corruption, fraud, or undue means"; where there was "evident partiality or corruption in the arbitrators"; where the arbitrators were "guilty of misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced"; where the arbitrators "exceeded their powers, or so imperfectly executed them"; where there was "an evident material miscalculation of figures or an evident material mistake"; where the arbitrators "have awarded upon a matter not submitted to them"; and where the award "is imperfect in matter of form."

parties unless there is a basis for modifying, vacating, or correcting it." (internal quotation marks omitted)). Respondents have neither moved to "vacate[], modif[y], or correct[]" the Award pursuant to the FAA, nor do Respondents "plan to do so." Response at 1-2. Moreover, Respondents do not oppose confirmation of the Award or Petitioners' application for a final order and judgment. *Id.* at 6-7. Although a "court cannot base the entry of summary judgment on the mere fact that the motion was unopposed," *Dishner v. Zachs*, No. 16 Civ. 4191 (LGS), 2016 WL 7338418, at *2 (S.D.N.Y. Dec. 19, 2016) (internal quotation marks omitted), the process of "confirming an arbitration award is much easier" because courts in this Circuit treat it as a "'summary proceeding,'" *Pacelli*, 549 F. Supp. 3d at 313 (quoting *D.H. Blair & Co.*, 462 F.3d at 110). As a summary proceeding, unless the "award is vacated, modified, or corrected," an otherwise timely and unopposed petition must be confirmed where there are no material facts in dispute, *Doud v. Gold*, No. 19 Civ. 6561 (KPF), 2019 WL 5209615, at *2-3 (S.D.N.Y. Oct. 16, 2019), and the record supports at least a "barely colorable justification for the outcome reached by the arbitrators," *Smarter Tools*, 57 F.4th at 378-79 (internal quotation marks omitted).

First, a court must independently review the record, "includ[ing] the arbitration agreement and the arbitration award," to determine whether the movant "has met its burden of demonstrating that no material issue of fact remains for trial." *Nat'l Health Fund*, 535 F. Supp. 2d at 428 (quoting *D.H. Blair & Co.*, 462 F.3d at 109). The record establishes that the parties voluntarily consented to the FINRA arbitration and are therefore bound by the Award. Sansbury Decl., Exh. 3 (Williams) ¶¶ 1, 4; *id.*, Exh. 4 (Blankenship) ¶¶ 1, 4; *id.*, Exh. 6 (JSLS) ¶¶ 1, 4; *id.*, Exh. 7 (MMAS) ¶¶ 1, 4. Indeed, Petitioners agree that Respondents promptly paid the Award. Petition ¶ 9; Response ¶ 8; *see also* Response at 4 (maintaining that Respondents already have paid the Award in the amount of $207,004.40, representing the $175,000 principal plus interest). Further, Respondents have

neither disputed the Panel's findings nor challenged "the legal sufficiency of the Award." *Egan*, 2021 WL 197085, at *2. Rather, Respondents maintain that the Petition is "unnecessary and a waste of judicial resources." Response at 4. This objection, however, is neither a recognized basis under the FAA for denying the confirmation of an award, nor does it present any factual dispute that would preclude confirmation. *See* 9 U.S.C. § 9. Thus, "[b]ased on the limited review that is appropriate of an unopposed petition to confirm an arbitration award," there is "no genuine dispute of material fact" that precludes confirmation of the Award. *N.Y.C. Dist. Council of Carpenters v. Reilly Partitions, Inc.*, No. 18 Civ. 1211 (JGK), 2018 WL 2417849, at *3 (S.D.N.Y. May 29, 2018); *see Nat'l Health Fund*, 535 F. Supp. 2d at 429 (declining to find any material issue of fact where the "respondents have offered no opposition and have not raised any questions of fact").

Second, a court must determine whether "a ground for the arbitrator's decision can be inferred from the facts of the case," such that a "barely colorable justification" exists. *Smarter Tools*, 57 F.4th at 378-79 (internal quotation marks omitted); *Lew Lieberbaum & Co. v. Randle*, 85 F. Supp. 2d 123, 127 (E.D.N.Y. 2000) (explaining that "the court [need only] infer whether *any* colorable claim can be supported by the evidence"). Further, "if a ground for the arbitrator's decision can be inferred from the facts of the case [alone], the award should be confirmed." *Barbier*, 948 F.2d at 121 (internal quotation marks omitted). Although the Panel did not provide a reason for its disposition, nor did it make findings of fact or conclusions of law for the $175,000 plus interest awarded, *see* Award at 9-10, "[a]rbitrators are not required to disclose the basis upon which their awards are made," *Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir. 1978). Arbitrators may issue a "lump sum award without disclosing their rationale for it," and "courts will not inquire into the basis of the award unless they believe the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it." *Koch Oil, S.A. v.*

*Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985); *see also Kurt Orban*, 573 F.2d at 740 (explaining that "courts will not look beyond the lump sum award . . . to analyze the reasoning processes of the arbitrators").

The Panel's rationale for the lump sum award can be inferred from the factual record. First, the Award explains that, of the seven claims Petitioners asserted in their Statement of Claim, the Panel considered the claims for conversion, unjust enrichment, and a demand for accounting in issuing the Award, after granting Respondents' motion for a directed verdict on the other claims. Award at 9-10. Second, those claims that the Panel considered arose from the factual allegation that, "[d]espite the severance of the relationship between [JSLS] and Royal Alliance by virtue of the resignations of the [Petitioners], [JSLS] continued to accept commissions earned by the [Petitioners]." SOC ¶ 80; *see also id.* ¶¶ 84, 87. Petitioners contended that those commissions were "intended to be distributed to the [Petitioners]" pursuant to the agreements among Petitioners, JSLS, and Royal Alliance, but were instead "wrongfully retained by JSL, MMA and/or [MMAS]." *Id.* ¶¶ 80-81; *see also id.* ¶¶ 84, 87-88.

The BDSA "between Royal Alliance and [JSLS]"—which "governed how [Petitioners'] fees and commissions would be paid"—was terminated by Royal Alliance on June 10, 2022. Arbitration Answer at 8, 19. Section 8.3 of the BDSA stipulates that, "[a]t the termination of this Agreement, all commissions . . . and other credits payable to either party as provided by this Agreement shall continue to be payable to such party for as long as such party or its employees or affiliates continues to service such accounts." BDSA § 8.3. Petitioners sought to recover the withheld commissions and fees generated by Petitioners' activities through Royal Alliance following the termination of the BDSA, claiming that such agreement, along with Williams's SRA, "required that the Respondents receive commissions and fees generated by [Petitioners] and . . .

deliver the same, after agreed deductions, to [Petitioners]." SOC ¶¶ 87.  Thus, although the basis

for the Panel's Award of $175,000 in compensatory damages plus interest is not explicitly stated,

it may reasonably be inferred from the record that this amount reflects commissions and fees

generated by and owed to Petitioners, but wrongfully withheld by Respondents, in violation of the

BSDA and Williams's SRA.  Award at 10; SOC ¶¶ 80, 84, 91; *see* BDSA §§ 2, 4.3, 8.3; Arbitration

Answer, Exh. 3 (SRA) § 1.  This inference sufficiently justifies the outcome reached by the Panel.

\* \* \*

Because there are "no material issues of fact remaining for trial" and the Panel's "decision

can be inferred from the case," Petitioners are "entitled to summary confirmation of the Award"

as a matter of law.  *Dishner*, 2016 WL 7338418, at \*2 (alterations adopted) (quoting *D.H. Blair &*

*Co.*, 462 F.3d at 110).[10]

---

[10] Courts may *sua sponte* check for the "ground[s] specified in 9 U.S.C. § 10 or § 11 . . . to vacate, modify, or correct [an] award," *Doud*, 2019 WL 5209615, at \*2-3, or, "more rarely," vacate an award where "a panel has acted in manifest disregard of the law," *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).  As noted, Respondents do not seek vacatur of the Award, and, in fact, have already paid the Award.  Response ¶ 8.  Nor do any grounds for vacatur or modification of the Award appear to exist here.  To start, the "manifest disregard" argument fails where "a justifiable ground for the decision can be inferred from the facts of the case," as it can be inferred here.  *Duferco Int'l Steel Trading*, 333 F.3d at 390.  Further, the parties "submitted to FINRA's arbitration" and "participated in the Arbitration" until the Panel reached a decision.  *Egan*, 2021 WL 197085, at \*2.  The Panel "acted within the scope of [its] authority" by awarding a lump sum "that included the unpaid [commissions and fees]" owed to Petitioners pursuant to the arrangements between Petitioners, JSLS, and Royal Alliance. *Abondolo*, 2008 WL 2047612, at \*3 (upholding an arbitration award containing limited reasoning because the court found a basis for the lump sum award in the contract between the parties). Finally, "there is no evidence in the record that the Award was procured by corruption, fraud, or undue means; that . . . the arbitrator was partial or corrupt; [or] that the arbitrator was guilty of any misbehavior prejudicing the rights of any party."  *Sire Spirits, LLC v. Green*, No. 21 Civ. 7343 (JPC), 2022 WL 2003483, at \*13 (S.D.N.Y. June 6, 2022) (citation modified).

## IV. Conclusion

For the reasons above, the Petition is granted. The Clerk of Court is respectfully directed to enter judgment confirming the Award of $175,000 plus pre-judgment interest on that amount accruing at the rate of 7.5% per annum from June 15, 2022, through and including November 21, 2024, and to close this case. The Court notes that Petitioners agree that Respondents have paid Award in the full amount, and therefore this judgment has been satisfied.

SO ORDERED.

Dated: August 21, 2025
       New York, New York

_____
JOHN P. CRONAN
United States District Judge